**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

FILED
RICHARD W. NAGEL
CLERK OF COURT

OCT 13 2026 12:48 P

U.S. DISTRICT COURT
SOUTHERN DISTRICT
OF OHIO DAYTON

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **Plaintiff,** | : | Case No. 3:26 CR 00099 |
| | : | |
| **v.** | : | |
| | : | INDICTMENT THOMAS M. ROSE |
| **1. JORAG YASEEN (Counts 1-5)** | : | |
| | : | 18 U.S.C. § 1343 |
| | : | 18 U.S.C. § 1349 |
| **2. RAMI KANAAN (Counts 1-5)** | : | 18 U.S.C. § 1956(h) |
| | : | FORFEITURE |
| | : | |
| **Defendants.** | : | |

**THE GRAND JURY CHARGES:**

**COUNT ONE**
**[18 U.S.C. §§ 1349 and 1343]**

## I. INTRODUCTION

At all times relevant to this Indictment:

### A. The Supplemental Nutrition Assistance Program

1. The Supplemental Nutrition Assistance Program (SNAP), formerly known as the Food Stamp Program (FSP), (collectively, "SNAP") is a federally funded national nutrition aid program administered by the United States Department of Agriculture (USDA) through its Food and Nutrition Service Administration (FNA)[1]. SNAP provides food benefits to low-income families to supplement their grocery budget so they can afford the nutritious food essential to health and well-being.

---

[1] On April 30, 2026, the United States Department of Agriculture, Food and Nutrition Service (USDA-FNS) was renamed the United States Department of Agriculture, Food and Nutrition Administration (USDA-FNA). Throughout this indictment, USDA-FNA and its predecessor USDA-FNS will be referred to collectively as USDA-FNA.

2. While the United States funds SNAP, individual states, including the State of Ohio, largely manage its day-to-day administration, including reviewing and approving applications of people seeking SNAP benefits as well as distributing those benefits to eligible recipients. The Ohio Department of Job and Family Services (ODJFS) administers SNAP on behalf of the State of Ohio.

3. Prior to 2001, SNAP participants received benefits in the form of paper coupons that they used to acquire food for themselves and their families at low or no cost. In 2001, SNAP transitioned away from these paper coupons to its current Electronic Benefit Transfer ("EBT") system. Under this EBT system, administrators, such as ODJFS, provide SNAP participants with EBT cards, which function much like debit cards. Each month, administrators, such as ODJFS, deposit SNAP benefits directly to the EBT card of an authorized SNAP participant.

4. Through USDA-FNA, the United States issues licenses that authorize certain retail food stores to accept EBT cards or SNAP benefits (hereinafter "Approved Stores"). These licenses authorize Approved Stores to sell eligible food items to SNAP participants and to accept SNAP benefits in the form of EBT cards as payment for the purchase of these products. In turn, a SNAP participant may only use the EBT card to purchase eligible food items at Approved Stores.

5. To complete this exchange of eligible food items for SNAP benefits, the Approved Store completes an electronic transaction by processing, scanning, or swiping the EBT card on what is commonly known as a point-of-sale device. With Ohio SNAP participants, the point-of-sale device then sends a signal or wire transmission to Conduent servers in Sandy, Utah, which communicates with ODJFS servers in the Southern District Ohio that confirms and causes an update to the balance of the EBT card reflecting the food purchase. In turn, the EBT system causes federal funds to be transferred to the Approved Store as reimbursement for the food sale to the

SNAP participant. At all times, the United States, the State of Ohio, and ODJFS expects that an Approved Store will only process or swipe an EBT card (and thus seek reimbursement of federal funds) for legitimate, bona fide food sales.

**The Defendants**

6. Defendant JORAG YASEEN ("YASEEN") resided in the Chicago, Illinois metropolitan area. YASEEN owned and operated a small retail food store known as Englewood Food Wholesale Market, Inc. (hereinafter "Englewood") at 5901 S. Racine Avenue, Chicago, Illinois. On or about February 1, 2024, USDA-FNA authorized Englewood as an Approved Store that could accept SNAP benefits in the form of EBT cards.

7. Defendant RAMI KANAAN ("KANAAN") resided in the Chicago, Illinois metropolitan area. KANAAN owned and operated a small retail food store known as Half Moon Grocery, Inc. (hereinafter "Half Moon") at 360 E. 79th Street, Chicago, Illinois. On or about January 18, 2023, USDA-FNA authorized Half Moon as an Approved Store that could accept SNAP benefits in the form of EBT cards.

## II. THE CONSPIRACY AND ITS OBJECT

8. Beginning on an exact date unknown, but at least in or around February 2024 and continuing through in or around April 2025, in the Southern District of Ohio, and elsewhere, Defendants YASEEN and KANAAN, and others known and unknown to the Grand Jury, acting with intent to defraud, knowingly and intentionally conspired to devise, to execute, and to participate in a scheme to defraud the United States and to obtain money and property owned by and under the custody and control of the United States, by means of materially false and fraudulent pretenses, representations, and promises, and the non-disclosure and concealment of material facts through an EBT fraud scheme, and for the purpose of carrying out and executing such scheme or

artifice, caused the transmission of writings, signs, and signals by means of wire communication in interstate commerce, in violation of Title 18, United States Code, Section 1343, the federal wire fraud statute.

## III. THE MANNER AND MEANS OF THE CONSPIRACY

9. Defendants YASEEN and KANAAN, and others known and unknown to the Grand Jury, intended to accomplish the objects of the conspiracy as follows: Defendants YASEEN and KANAAN, and others known and unknown to the Grand Jury, represented themselves and their businesses, including Englewood and Half Moon, as stores that intended to make bona fide sales of authorized food products to SNAP participants. Specifically, on behalf of their respective businesses, Defendants YASEEN and KANAAN applied to become Approved Stores that USDA-FNA authorized to accept SNAP benefits in exchange for legitimate sales of authorized products to SNAP participants. As part of the approval process, Defendants YASEEN and KANAAN individually received training from USDA-FNA concerning proper processes and procedures for accepting EBT cards and SNAP benefits at their stores, including the requirement that their businesses only swipe EBT cards for legitimate, authorized transactions. Defendants YASEEN and KANAAN further signed certifications indicating their understanding of the requirements to accept EBT cards and their commitment to ensuring that they and any employees complied with these rules. Based on these representations, USDA-FNA authorized Englewood and Half Moon as Approved Stores.

10. After becoming Approved Stores, Defendants YASEEN and KANAAN individually acquired mobile point-of-sale devices from a third-party vendor, permitting them and their respective businesses to perform the electronic transactions necessary to process a SNAP participant's EBT card. Notably, Defendants YASEEN and KANAAN, and others known and

unknown to the Grand Jury, maintained control of these point-of-sale devices and never reported them stolen, lost, or misplaced to the third-party vendor.

11. Around this same time, a criminal organization later discovered by state and federal law enforcement stole the EBT account information for thousands of Ohio SNAP participants (hereinafter, "the Stolen Ohio EBT Cards"), including individuals in, among other places, Greene County, Ohio. This criminal organization illegally and improperly transferred the Stolen Ohio EBT Cards along with account information of thousands of SNAP participants from other states (hereinafter, "the Stolen National EBT Cards") to criminal accomplices in the State of Illinois.

12. Defendants YASEEN and KANAAN, and others known and unknown to the Grand Jury, knowingly and intentionally caused, authorized, and permitted thousands of Stolen Ohio EBT Cards and the Stolen National EBT Cards to be fraudulently processed, scanned, or swiped using their respective point-of-sale devices located in the Chicago, Illinois metropolitan area. In doing so, Defendants YASEEN and KANAAN, and others known and unknown to the Grand Jury, fraudulently intended to represent that the processing, scanning, or swiping of the Stolen Ohio EBT Cards and the Stolen National EBT Cards represented bona fide, actual sales of authorized food items to SNAP participants. In reality, Defendants YASEEN and KANAAN, and others known and unknown to the Grand Jury, knew that each of these purported transactions was fraudulent and, in fact, did not reflect an actual sale of authorized goods to a SNAP participant. In causing, authorizing, and permitting these fictitious transactions, Defendants YASEEN and KANAAN, and others known and unknown to the Grand Jury, fraudulently intended to seek improper reimbursements of federal funds from ODJFS and other state administrators of SNAP.

13. In fraudulently causing, authorizing, and permitting these fictitious transactions on the Stolen Ohio EBT Cards from their point-of-sale devices, Defendants YASEEN and KANAAN,

and others known and unknown to the Grand Jury, caused thousands of wire transmissions between the State of Illinois and ODJFS servers in the Southern District of Ohio.

14. Based on the false and fraudulent representations from Defendants YASEEN and KANAAN, and others known and unknown to the Grand Jury, that these fictitious transactions on the Stolen Ohio EBT Cards and the National EBT Cards were bona fide and legitimate, ODJFS and other state administrators of SNAP transferred millions of dollars in federal funds to bank accounts under the control of Defendants YASEEN and KANAAN, and others known and unknown to the Grand Jury. From these accounts, Defendants YASEEN and KANAAN, and others known and unknown to the Grand Jury, improperly enriched themselves and others with these fraudulently-obtained federal funds by, among other things, purchasing automobiles for use and shipment overseas. In total, the activities of Defendants YASEEN and KANAAN, and others known and unknown to the Grand Jury, defrauded the United States of millions in dollars of funds totaling approximately $29,723,061.29.

All in violation of Title 18, United States Code, Sections 1349 and 1343.

## COUNTS TWO THROUGH FOUR
## [18 U.S.C. §§ 1343 and 2]

## I. INTRODUCTION

15. Paragraphs 1 through 7 of this Indictment are hereby realleged and incorporated by reference as if fully set forth herein.

## II. THE SCHEME TO DEFRAUD AND ITS EXECUTION

16. Beginning on an exact date unknown, but at least by February 2024 and continuing through in or around April 2025, in the Southern District of Ohio, and elsewhere, Defendants YASEEN and KANAAN, and others known and unknown to the Grand Jury, aiding and abetting each other, knowingly and with the intent to defraud, devised, executed, and participated in a

scheme to defraud the United States and to obtain money and property owned by and under the custody and control of the United States, by means of materially false and fraudulent pretenses, representations, and promises, and the non-disclosure and concealment of material facts through a fraudulent EBT card scheme.

17. The scheme was designed to operate and did operate as described above in paragraphs 8 through 14, including subparagraphs, of this Indictment.

## III. THE WIRINGS

18. On or about the dates set forth below, in the Southern District of Ohio, and elsewhere, the defendants identified below, aiding and abetting each other, for the purpose of executing the above-described scheme, caused the transmission of the following writings, signs, and signals, by means of wire communication in interstate commerce from the State of Illinois to the Southern District of Ohio, with each wire constituting a separate count herein:

| COUNT | DEFENDANTS | DATE | INTERSTATE WIRE |
|---|---|---|---|
| 2 | YASEEN KANAAN | 3/4/2024 at approximately 9:42:10 a.m. | Transaction on Stolen Ohio EBT Card belonging to Greene County, Ohio, resident D.S. in the amount of $401.22 |
| 3 | YASEEN KANAAN | 3/4/2024 at approximately 9:42:25 a.m. | Transaction on Stolen Ohio EBT Card belonging to Greene County, Ohio, resident D.S. in the amount of $399.88 |
| 4 | YASEEN KANAAN | 3/4/2024 at approximately 9:42:39 a.m. | Transaction on Stolen Ohio EBT Card belonging to Greene County, Ohio, resident D.S. in the amount of $442.36 |

All in violation of Title 18, United States Code, Sections 1343 and 2, and *Pinkerton v. United States*, 328 U.S. 640 (1946).

**COUNT FIVE**
**[18 U.S.C. § 1956(h)]**

## I. INTRODUCTION

19. The Grand Jury realleges and incorporates herein by reference Paragraphs 1 through 7 and Paragraphs 9 through 14 as set forth in full.

## II. THE CONSPIRACY

20. Between a beginning date unknown, but at least by in or around February 2024 and in or around May 2025, in the Southern District of Ohio, and elsewhere, Defendants YASEEN and KANAAN, and others known and unknown to the Grand Jury, knowingly conspired to commit offenses against the United States, in violation of Title 18, United States Code, Section 1956, namely:

a. to knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, which involved the proceeds of a specified unlawful activity – namely, wire fraud in violation of Title 18, United States Code, Section 1343 as well as the unauthorized use, transfer, acquisition, possession of SNAP benefits of a value of $5,000 or more in violation of 7 U.S.C. § 2024(b) – with the intent to promote the carrying on of specified unlawful activity – namely, wire fraud in violation of Title 18, United States Code, Section 1343 as well as the unauthorized use, transfer, acquisition, possession of SNAP benefits of a value of $5,000 or more in violation of 7 U.S.C. § 2024(b) – and that while conducting and attempting to conduct such financial transactions knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i);

b. to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified

unlawful activity – namely, wire fraud in violation of Title 18, United States Code, Section 1343 as well as the unauthorized use, transfer, acquisition, possession of SNAP benefits of a value of $5,000 or more in violation of 7 U.S.C. § 2024(b) – knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity – namely, wire fraud in violation of Title 18, United States Code, Section 1343 as well as the unauthorized use, transfer, acquisition, possession of SNAP benefits of a value of $5,000 or more in violation of 7 U.S.C. § 2024(b) – and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

In violation of Title 18, United States Code, Section 1956(h).

**FORFEITURE ALLEGATION ONE**

Upon conviction of one or more of the offenses set forth in Counts One through Four of this Indictment, Defendants YASEEN and KANAAN shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(l)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the violation(s) including, but not limited to, a sum of money equal to the amount of proceeds the defendant obtained as a result of the offense(s) in the form of a forfeiture money judgment.

**FORFEITURE ALLEGATION TWO**

Upon conviction of the offense set forth in Count Five of this Indictment, Defendants YASEEN and KANAAN shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(l), any property, real or personal, involved in such offense, and any property traceable to such property

including, but not limited to, a sum of money equal to the amount of money involved in the offense in the form of a forfeiture money judgment.

**SUBSTITUTE ASSETS**

If any of the property described above, as a result of any act or omission of the defendants:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been comingled with other property which cannot be subdivided without difficulty,

the United States intends, pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. 982(b)(1) or 28 U.S.C. § 2461(c), to seek forfeiture of any other property of the defendants up to the value of the property described above.

A TRUE BILL

S/
FOREPERSON

DOMINICK S. GERACE II
United States Attorney

Ryan A. Saunders
Assistant United States Attorney

Brian M. McDonough
Special Assistant United States Attorney